IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYRESSE RAGLAND, | )<br>)<br>) |
| Plaintiff, | ) Case No. 08 C 6157 |
| v. | )<br>) Judge Virginia M. Kendall |
| CARLOS A. ORTIZ, BRAD J. PALM, MICHAEL G. YOUNAN, DEMETRIOS A. HALEAS, SONIA M. MORIARTY, and CITY OF CHICAGO | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyresse Ragland ("Ragland") filed suit against Chicago Police Officers Carlos Ortiz ("Ortiz"), Brett Palm ("Palm"), Michael Younan ("Younan"), Demetrios Haleas ("Haleas"), Sonia Moriarty ("Moriarty") and the City of Chicago ("City") (together "Defendants"). Ragland alleges that Palm, Younan, and Haleas falsely arrested him (Count I); that Ortiz used excessive force against him (Count II); that Ortiz and the City battered him (Count III); that Palm, Younan, Haleas, and Moriarty failed to intervene (Count IV); that Defendants intentionally inflicted emotional distress (Count V); and that Defendants maliciously prosecuted him (Count VI). Both parties move for partial summary judgment. Specifically, Ragland moves for summary judgment on Count I. Palm, Younan and Haleas also move for summary judgment on Count I. Moriarty moves for summary judgment on Count IV. Defendants move for summary judgment on Count V and Ortiz, Palm, Younan, Haleas, and Moriarty move for summary judgment on Count VI. The parties agree to, and

the Court grants, Moriarty's Motion for Summary Judgment on Count IV.[1] For the following reasons, the Court denies both Ragland's and Palm, Younan, and Haleas' Motions for Summary Judgment on Count I. The Court grants Defendants' Motion for Summary Judgment on Count V and grants Ortiz, Palm, Younan, Haleas, and Moriarty's Motion for Summary Judgment on Count VI.

**STATEMENT OF UNDISPUTED FACTS**[2]

Ortiz, Palm, Younan, Haleas, and Moriarty were Chicago Police Officers in October 2007. (P 56.1 Resp. ¶¶ 2-6.) Each officer worked a shift that began on October 26, 2007 and ended on October 27, 2007. (*Id*.)

Reginald White ("White") is a security guard with approximately fifteen years of work experience. (P 56.1 Resp. ¶ 7(c).) White has worked as security at the Tini Martini, a lounge in Chicago, for six years and was working there on the evening of October 26, 2007 and into the morning of October 27, 2007. (P 56.1 Resp. ¶ 7(b).)

**I. Tini Martini**

Ragland, a Chicago resident, visited the Tini Martini on the evening of October 26, 2007 with his friend David Brown ("Brown"). (P 56.1 Resp. ¶ 8(a); D 56.1 Resp. ¶ 1.) After a dispute over the amount of change he was owed by a Tini Martini bartender, Ragland was asked to leave the Tini Martini. (P 56.1 Resp. ¶ 8(b); D 56.1 Resp. ¶ 5.) White escorted Ragland out of the lounge without

---

[1] Count IV remains against Palm, Younan, and Haleas.

[2] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Facts have been abbreviated to "D 56.1 Ex. __."; citations to Ragland's Answers to Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Facts have been abbreviated to "P 56.1 Resp. ¶ __."; citations to Ragland's Statement of Additional Material Facts under LR. 56.1(b)(3)(C) have been abbreviated to "P 56.1 Add. Facts Ex. __."; citations to Defendants' Response to Ragland's Statement of Additional Material Facts under LR. 56.1(b)(3)(C) have been abbreviated to "D 56.1 Resp. ¶ __."

incident. (D 56.1 Resp. ¶¶ 5, 6.)

Once outside of the Tini Martini, Ragland complained about how he was being treated. (P 56.1 Resp. ¶ 8(d); D 56.1 Resp. ¶ 9.) White told Ragland that he could not re-enter the Tini Martini and that he should instead go home. (P 56.1 Resp. ¶ 8(e).) Ragland responded "F --- this." (D 56.1 Resp. ¶ 11.) White took the comment personally and replied, "Who? F --- me?" (*Id.*)

White then walked across the street towards Juan Santiago ("Santiago") and Gino Ibarra ("Ibarra"), two Chicago Police Department officers who were engaged in a traffic stop, and asked them if they had received a call from the Tini Martini. (D 56.1 Resp. ¶ 12; P 56.1 Resp. ¶ 9(a).) Santiago and Ibarra replied that they had not received a call from the Tini Martini. (P 56.1 Resp. ¶ 9(a).) White told Santiago and Ibarra that he was having a problem with a patron. (D 56.1 Resp. ¶ 13.) Santiago and Ibarra determined that White's request was not an urgent one. (D 56.1 Resp. ¶ 14.) Santiago called the dispatcher to send a "midnight car" because they were ending their shift. (*Id.*)

After Santiago's call to the dispatcher, three plainclothes Chicago Police officers—Palm, Younan, and Haleas—arrived outside the Tini Martini in an unmarked car. (D 56.1 Resp. ¶ 16.) While the order of the ensuing events is disputed, it is undisputed that one of the three plainclothed officers arrested Ragland and put him in handcuffs. (Def. Exh. B, Deposition of Tyresse Ragland ("Ragland Depo.") at 72:10-17.) It is also undisputed that Palm, Younan, and Haleas spoke to Ragland and White, each of whom told Palm, Younan, and Haleas that there had been a dispute about a bar tab. (D 56.1 Resp. ¶ 18.) It is undisputed that White signed a complaint of assault against Ragland, but the parties dispute whether this occurred at the scene of the arrest or later at the police station. (P 56.1 Resp. ¶ 10(d).) White's signed complaint of assault against Ragland stated

3

that Ragland threatened to come back to the Tini Martini and shoot White. (*Id.*) Palm and Younan claim to have arrested Ragland because White said he was "afraid" of Ragland due to Ragland's behavior and threatening remarks. (D 56.1 Resp. ¶ 31.)

A group of about a dozen people were outside of the Tini Martini when the arrest took place. (D 56.1 Resp. ¶ 36.) Palm, Younan, and Haleas did not hear Ragland make any verbal threats or see him make any physically threatening gestures, nor did they find a gun or any other weapon on him. (D 56.1 Resp. ¶¶ 20, 21.) Before placing Ragland into the unmarked police car, an officer allowed Ragland to give his cell phone and car keys to Brown. (P 56.1 Resp. ¶ 10(c).)

## II. Police Station

After his arrest outside the Tini Martini, Ragland was taken to the 14th District Police Station in Chicago and brought to the tactical office. (P 56.1 Resp. ¶ 12(a).) At some point while at the Police Station, Ortiz shot Ragland with a taser. (P 56.1 Resp. ¶ 12(b).)

## III. Criminal Charges

Ragland was charged with assault regarding the incident with White outside of the Tini Martini and with battery regarding the tasering incident. (D 56.1 Resp. ¶ 39.) The battery complaint, signed by Ortiz, alleges that Ragland swung at him and made contact and that Ortiz was forced to block the punch with his arm. (P Exh. P, Criminal Complaints.) Ragland was "scared" and "stressed" while he was incarcerated. (P 56.1 Resp. ¶ 20(b).) The assault and battery charges against Ragland were stricken on leave to refile. (D 56.1 Resp. ¶ 39.) When Ragland was released from incarceration he lost his job, his girlfriend broke up with him, and Ragland had to move out of the house where his son lives. (P 56.1 Resp. ¶ 20(a).)

Ragland initiated this lawsuit on October 27, 2008.

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

**DISCUSSION**

**I. Count I**

Count I of Ragland's Amended Complaint alleges that Palm, Younan, and Haleas falsely arrested him. Ragland moves for summary judgment on Count I, as do Palm, Younan, and Haleas. The parties dispute whether Palm, Younan, and Haleas had probable cause to arrest Ragland and

whether Palm, Younan, and Haleas are entitled to qualified immunity.

### A. Probable Cause

The existence of probable cause bars the plaintiff's recovery on a false arrest claim under § 1983. *See Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (probable cause is an "absolute defense" to any claim under § 1983 against police officers for "wrongful arrest, false imprisonment, or malicious prosecution"). Although probable cause requires more than a bare suspicion of criminal activity, it does not require evidence sufficient to support a conviction. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007); *Askew v. City of Chi.*, 440 F.3d 894, 895 (7th Cir. 2006) (police may arrest "and let prosecutors and the courts determine who is telling the truth"). Probable cause exists where "a reasonably credible witness" informs an officer that a suspect has committed a crime. *Mustafa*, 442 F.3d at 548. When arresting someone for criminal conduct that he did not witness, "a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth." *Holmes*, 511 F.3d at 680. "[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Id.* at 682 (emphasis in original); *see Jackson v. Parker*, --- F.3d ----, 2010 WL 4909459 (7th Cir. Dec. 3, 2010) (arrest is reasonable as long as there is probable cause to believe that some criminal offense has been committed). Probable cause need not be "'closely related' to [or] based on the same conduct as the offense identified by the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, the material facts surrounding Ragland's arrest are in dispute. White claims that Ragland, after being told to leave the premises, threatened to come back to the Tini Martini lounge

6

with a gun and shoot at White and the lounge. White also claims that Ragland was causing a disturbance outside of the lounge and yelling profanities. Palm, Younan, and Haleas confirm that, when they arrived, Ragland appeared intoxicated and was behaving aggressively and belligerently outside of the lounge, though they did not overhear Ragland threaten White that he would come back with a gun and shoot him. Palm, Younan, Haleas, and White confirm that when Palm, Younan, and Haleas arrived at the Tini Martini, they first spoke with White about Ragland's threatening remarks. Palm, Younan, Haleas, and White agree that it was only after speaking with White that the officers arrested Ragland. Palm, Younan, and Haleas argue that White's eyewitness testimony, or in the alternative, their own observations of Ragland, gave them probable cause to arrest Ragland for assault, disorderly conduct, or criminal trespassing.[3]

Ragland, however, disputes these allegations. He claims he never threatened to retrieve a gun, nor did he threaten to shoot anyone. Ragland also claims he was standing peacefully outside of the Tini Martini when the plainclothed officers arrived in an unmarked car and arrested him, without first speaking to White. Ragland argues that based on his version of events, supported by the statements in his deposition, the officers did not have probable cause to arrest him and that he is therefore entitled to summary judgment on his false arrest claim.

The Court finds that factual disputes exist as to whether Palm, Younan, and Haleas observed Ragland acting belligerently outside of the Tini Martini and whether Palm, Younan, and Haleas spoke to White before arresting Ragland. As such, the officers are unable to conclusively demonstrate probable cause to arrest Ragland because the undisputed facts do not show that they

---

[3] Even though Santiago radioed the dispatcher about an incident at the Tini Martini involving a belligerent patron, there is no undisputed evidence that the officers were relying on the dispatcher when they arrived at the Tini Martini and arrested Ragland.

relied on credible eyewitness testimony or observed Ragland committing a crime before they arrested him.

Ragland's claim that he was falsely arrested because Palm, Younan, and Haleas lacked probable cause to arrest him for assault is similarly unavailing. Palm, Younan, and Haleas were justified in arresting Ragland for assault if they had probable cause that Ragland committed any crime, not just assault. *See Holmes*, 511 F.3d at 682. According to their depositions, the officers believed, based on their own observations and credible eyewitness testimony, that Ragland had committed criminal acts when they arrested him. In spite of their deposition testimony, however, the material facts surrounding Ragland's arrest remain in dispute. As such, the Court cannot determine conclusively whether the officers had probable cause to arrest Ragland.

Therefore, the existence of probable cause is a disputed fact and cannot be resolved at the summary judgment stage in favor of Ragland or the officers.

**B.     Qualified Immunity**

Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about. *See Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Arrests made without probable cause do not necessarily deprive an officer of qualified immunity. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013 (7th Cir. 2006). The relevant question is whether a reasonable officer could have believed that probable cause existed to make the arrest. *See Hunter v. Bryant*, 502 U.S. 224,

229 (1991) (officers protected by qualified immunity where they possessed trustworthy but ultimately incorrect evidence).

Here, material disputes exist as to whether the officers observed Ragland behaving belligerently outside of the Tini Martini and whether the officers spoke with White, a credible witness, before arresting Ragland. As such, the actions of the officers and the information that the officers possessed when they arrested Ragland are in dispute and the Court cannot determine whether Palm, Younan, and Haleas are entitled to qualified immunity.

Therefore, the Court is unable to conclude whether Palm, Younan, or Haleas acted reasonably or were justified in arresting Ragland outside of the Tini Martini. The Court denies Ragland's Motion for Summary Judgment on Count I. The Court also denies Palm, Younan, and Haleas' Motion for Summary Judgment on Count I.

## II. Count V

Count V of Ragland's Amended Complaint alleges that Defendants intentionally inflicted emotional distress. Under Illinois law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct of defendant; (2) defendant knew, or should have known, that the conduct would inflict severe emotional distress; and (3) defendant's conduct did cause extreme emotional distress. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79-80 (Ill. 2003). "Liability attaches only in circumstances where the defendant's conduct is so outrageous and extreme that it goes beyond all possible bounds of decency." *Tuite v. Corbitt*, 830 N.E.2d 779, 899 (Ill. App. Ct. 2005), *rev'd on other grounds*, 866 N.E.2d 114 (Ill. 2006). Mere insults, indignities or threats are not actionable. *See Pub. Fin. Corp. v. Davis*, 360 N.E. 2d 765, 767-68 (Ill. 1976). Additionally, the resultant emotional distress must be so severe that no reasonable person could be expected to endure

9

it, considering the intensity and the duration of the distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 806 (Ill. 1988); *see also Kleidon v. Rizza Chevrolet, Inc.*, 527 N.E.2d 374, 377 (Ill. App. Ct. 1988) ("Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable.").

Here, Ragland was tasered in the chest and he claims to have physical suffered chest pains as a result. He also states that he was "scared" and "stressed" following his incarceration. Ragland further alleges emotional distress from his girlfriend breaking up with him and being forced to move out of the house where his son lives. These emotional injuries—particularly being "scared" and "stressed"—do not rise to the level of extreme emotional distress. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (emotional distress alone does not give rise to a cause of action); *see, e.g., Russ v. Causey*, --- F. Supp. 2d ----, 2010 WL 3075505 (E.D. N.C. Aug. 5, 2010) (Flanagan, C.J.) (extreme emotional distress defined as any emotional or mental disorder such as "neurosis, psychosis, chronic depression, phobia," or other severe and disabling emotional or mental condition); *Kleidon*, 527 N.E.2d at 377. Similarly, the domestic adjustments that Ragland had to make in his personal life following his incarceration do not demonstrate extreme emotional distress. Moreover, Ragland has not provided any evidence that his physical injury—his chest pain—is linked to any emotional distress that he has suffered. Nothing in the record indicates that the Defendants caused Ragland to experience the type of severe emotional distress that no reasonable person could endure. *See Feltmeier*, 798 N.E.2d at 84.

Ragland's chest pains and the subsequent changes in his personal life do not rise to the level of extreme emotional distress. Because extreme emotional distress is a required element of the tort, the Court need not assess whether the conduct of individual Defendants was extreme and outrageous.

The Court grants Defendants' Motion for Summary Judgment on Count V.

## III. Count VI

Count VI of Ragland's Amended Complaint alleges that Defendants maliciously prosecuted him. Under Illinois law, the elements of a malicious prosecution claim are: (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff in a manner indicative of his innocence; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). The absence of any one of these elements bars a plaintiff from pursuing the claim. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

Ortiz, Palm, Younan, Haleas, and Moriarty argue that the assault and battery charges against Ragland were not dismissed in a manner indicative of innocence, that there is no evidence that the officers acted with malice, and that probable cause existed for the arrest and criminal proceedings. As discussed in Section I(A) *supra*, the Court cannot determine at this stage of the proceedings whether probable cause existed for the arrest.

### A. Termination of Proceedings

Ragland's assault and battery charges were stricken on leave to refile. In Illinois, charges stricken on leave to refile are not necessarily indicative of innocence. *See, e.g., Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (dispositions that do not reach the merits may satisfy favorable termination requirement). Courts must examine the "circumstances and nature of the prior disposition to determine whether it was a 'favorable termination' of the proceedings." *See Velez v. Avis Rent-A-Car Sys., Inc.*, 721 N.E.2d 652, 656 (1st Dist. 1999). "[I]t is plaintiff's burden to present evidence that the [stricken on leave to refile determination] was

11

entered for reasons consistent with her innocence." *See, e.g., Allen v. Smith*, 1999 WL 1144944 at *1 (N.D. Ill. Oct. 6, 1999) (Gettleman, J.) (granting defendant's motion for summary judgment on malicious prosecution claim where plaintiff failed to present evidence regarding reasons for charges being stricken on leave to refile).

Here, Ragland fails to provide any factual evidence beyond his unsubstantiated assertions that the charges were stricken on leave to refile in a manner indicative of his innocence. *See Penn v. Harris*, 296 F.3d 573, 577 (7th Cir. 2002) (defendant granted summary judgment where plaintiff asserted unfounded claims of why prosecutor dismissed state claims against him). There is no indication in the record that the circumstances surrounding the decision to strike the assault and battery charges against Ragland, on leave to refile, reflect innocence. As such, Ragland has failed to meet his burden regarding this element of his malicious prosecution claim. The Court therefore grants Ortiz, Palm, Younan, Haleas, and Moriarty's Motion for Summary Judgment on Count VI.

**IV. Conclusion**

For the reasons stated, the Court denies Ragland's Motion for Summary Judgment on Count I and denies Palm, Younan, and Haleas' Motion for Summary Judgment on Count I. The Court grants Moriarty's Motion for Summary Judgment on Count IV. The Court grants Defendants' Motion for Summary Judgment on Count V and grants Ortiz, Palm, Younan, Haleas, and Moriarty's Motion for Summary Judgment on Count VI.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 3, 2011