IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TYRESSE RAGLAND | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. 08 C 6157 |
|  | ) | |
| CARLOS A. ORTIZ, BRAD J. PALM, MICHAEL G. YOUNAN, DEMETRIOS A. HALEAS, SONIA M. MORIARTY and CITY OF CHICAGO, | ) ) ) ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyresse Ragland ("Plaintiff") sued Defendants Carlos A. Ortiz, Brad J. Palm, Michael G. Younan, Demetrios A. Haleas, Sonia M. Moriarty, and the City of Chicago under 42 U.S.C. § 1983 for violation of his constitutional right against the use of excessive force. After a jury trial on July 29, 2011, the jury returned a verdict for Plaintiff in the total amount of $52,500. On Count I (false arrest claim), the jury awarded Plaintiff $500 in compensatory damages against Defendants Palm, Younan, and Haleas. The jury also found for Plaintiff on Count II (excessive force claim), awarding $49,000 in compensatory damages and $3,000 in punitive damages against Defendant Ortiz. The jury returned a verdict in favor of Defendants on Count IV (failure to intervene). Prior to trial, the Court granted Defendants' motion for summary judgment on Counts V and VI, and by agreement granted summary judgment in favor of Defendant Moriarty on Count IV (failure to intervene). Plaintiff also voluntarily dismissed Count III at the beginning of the trial.

Presently pending before the Court is Plaintiff's petition for attorney's fees. Plaintiff seeks $302,810.00 in fees.[1] This Court referred the fee petition to Magistrate Sidney I. Schenkier, who issued a Report & Recommendation ("R&R"). Judge Schenkier recommended that the Plaintiff be awarded $170,118.00 in attorney's fees; prejudgment interest on the attorney's fee award, with interest beginning on September 18, 2011; and denied any interim fee award. Plaintiff objects to the Report and Recommendation on four grounds.

## ANALYSIS

Where a plaintiff prevails on a claim brought under 42 U.S.C. § 1983, that plaintiff is entitled to recover reasonable attorney's fees. *See* 42 U.S.C. § 1988; *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 632-3 (7th Cir. 2011). Plaintiff succeeded on two Section 1983 claims against four defendants for a collective total of $52,500.

When calculating a reasonable attorney's fee award for a Section 1988 fee petition, the starting point is the "lodestar analysis." *Pickett*, 664 F.3d at 639. This lodestar analysis requires a court to multiply the number of hours reasonably expended by plaintiff's attorneys by their reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1999). In determining the appropriateness of this lodestar amount, the court may consider many factors, including the results obtained, the complexity of the legal issues and the experience and success of the attorneys. *See Hensley*, 461 U.S. at 433 (1983); *see also Jaffe v. Richmond*, 142 F.3d 409, 412-3. Additionally, proportionality between the amount requested from the jury and the final jury verdict and that jury verdict, on the

---

[1] Plaintiff also filed a bill of costs, that drew objection from Defendants. The Court referred the bill of costs to Judge Schenkier as well, who issued a separate brief Report and Recommendation. (Docket No. 185). Plaintiff's objection to the costs Report and Recommendation is addressed at the conclusion of this opinion.

2

one hand, and the amount of attorney's fees requested, on the other hand, may be factored into a lodestar analysis. *See Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000). The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *See Hensley*, 461 U.S. at 437. Once the lodestar calculation has been made, the party seeking a reduction in the lodestar bears the burden of demonstrating that the reduction is warranted. *See Robinson v. City of Chicago*, 489 F.3d 864 (7th Cir. 2007).

I. **The rate determination.**

A reasonable hourly rate, as defined by the Seventh Circuit, is one that is "derived from the market rate for services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Where an attorney "maintains a contingent fee or public interest practice," and therefore does not have an established billing rate, plaintiff must provide contextual evidence for their requested rate in the form of the rates charged by lawyers in the community of "reasonably comparable skill, experience and reputation." *People Who Care*, 90 F.3d at 1310.

Judge Schenkier properly determined that the appropriate rates for Plaintiff's attorneys, Ms. Dymkar and Mr. Bowers, was $330/hour and $310/hour, respectively. Judge Schenkier based his recommendation on the affidavits provided by Plaintiff, the Laffey Matrix and the experience and record of accomplishment of Plaintiff's attorneys. Plaintiff objects to these determinations on several counts.

   A. *Laffey Matrix*

First, Plaintiff contends that the City of Chicago should be judicially estopped from arguing that the Laffey Matrix does not apply in this case, because the City has successfully used the Matrix to its own advantage in prior cases. (Pl.'s Obj. [Docket No.189] at 5-6). The Laffey Matrix is a chart

3

of hourly rates specific to the Washington D.C. area. *See Pickett*, 664 F.3d at 649. The Seventh Circuit recently reiterated that it has never fully addressed the Laffey Matrix, but has noted that trial courts in this Circuit have "viewed it with differing levels of praise and skepticism." *Id.* at 650. The Laffey Matrix places a heavy emphasis on the number of years in practice and the Judge Schenkier properly realized that such a formula is incomplete when calculating an appropriate hourly rate. (R&R at 7-9). The Seventh Circuit has further counseled the use of caution in applying the Matrix to the discretionary rate determination process. *See Pickett*, 664 F.3d at 650.

This exercise of caution does not, however, bar the consideration of the Laffey Matrix as a factor in rate determinations, nor does it judicially estop the City of Chicago from arguing that the Matrix should not apply in this case. Judicial estoppel generally applies in situations where the operative facts remain the same from one case to the next. *See Jarrad v. CDI Telecomms, Inc.*, 408 F.3d 905, 915 (7th Cir. 2005). Fee determinations by their very nature are discretionary and dependent on the particular evidence presented with each individual fee petition. *See id.* There is no error in using the Matrix as one of the factors, but not the sole factor, that Judge Schenkier considered in reaching his conclusion.

  **B.**  ***Prior City of Chicago Rate Agreements***

Second, Plaintiff argues that the hourly rates proposed by Judge Schenkier are insufficient because they fail to account for an agreement between the City of Chicago and Plaintiff's counsel in a different matter. (Pl.'s Obj., at 6-7). In the case of *Nelson v. Lis*, 09 c 883, the City of Chicago agreed to pay Ms. Dymkar an hourly rate of $416.67 in a sanctions settlement. Judge Schenkier properly noted that this negotiated resolution of fees is not instructive as to Ms. Dymkar's reasonable

hourly rates and correctly omitted this negotiated sum from the calculation of a reasonable hourly fee in an excessive force case. (R&R at 9-10).

      C.     ***Years of Litigation Practice***

Third and Fourth, Plaintiff contends that the Judge Schenkier placed too little emphasis on the most important factors in hourly rates, the number of years in practice and associated degree of trial experience. (Pl.'s Obj. at 7-10). Judge Schenkier succinctly dispatched of this contention by opining that the "use of years of practice as a proxy for experience and skill (and thus the market rate that is commanded by an attorney) becomes increasingly crude - and decreasingly helpful- in the 8 to 10 year, 11 to 19 year and 20-plus year brackets." (R&R at 8). Thus, in cases such as these, the number of years of trial experience is not the single most important factor in a rate determination, but rather one factor among many to be considered. This Court will consider, as Judge Schenkier did, each attorney's years of experience.

Ms. Dymkar has practiced law for 34 years and is seeking an hourly rate of $495.00/hour, the same rate established in the Laffey Matrix for an attorney with 20 or more years of experience. (*Id.* at 9). As discussed by Judge Schenkier, Ms. Dymkar's record, while extended in time, lacks the experience and jury verdicts in police misconduct cases to warrant such an excessive hourly rate. Ms. Dymkar's affidavit attached to the fee petition states that she has worked exclusively on alleged police misconduct cases since 2006. (Pl.'s Pet. [Docket No. 160] Ex. 20 at ¶10-11). Ms. Dymkar also states that the "vast majority" of her alleged police misconduct cases have been settled, thus accounting for the lack of judicial opinions setting forth her reasonable hourly rate. (R&R at 10). Ms. Dymkar cites to a "computable hourly rate range" based on these settlement amounts, but fails to

5

provide details of these settlements beyond mentioning one settlement at $1 million. (Pl.'s Pet. Ex. 20 at ¶10).

Ms. Dymkar finally submitted eight declarations to support the rate she seeks, which Judge Schenkier considered at length. (R&R at 12-15). This Court agrees with the detailed analysis of Judge Schenkier and also agrees that the declarations provided are conclusory and do not adequately convey the appropriate rate for Ms. Dymkar. Similarly, while not downplaying or disregarding Ms. Dymkar's ability or dedication to her clients, the connections Ms. Dymkar attempts to draw between herself and other more experienced attorneys are not sound, given the advanced experience and success of the other attorneys. (*Id.* at 12-13). Accordingly, the number of years Ms. Dymkar has practiced law in addition to her success and experience at litigating alleged police misconduct cases requires a reasonable hourly rate of $330/hour.

Mr. Bowers has practiced law for 34 years in a number of different settings including work as a general counsel, trial lawyer for the United States Department of Labor and as a trial attorney in medical malpractice and personal injury cases. (*Id.* at 17-18). He has been working with Ms. Dymkar on police misconduct cases since 2006 and has participated in 11 jury trials with her in the past year and a half. (*Id.* at 18). From the Plaintiff's own admissions, Mr. Bowers does not appear to have extensive experience conducting jury trials, less than Ms. Dymkar and certainly less than several of the attorneys mentioned in declarations, such as Mr. Loevy. Id. During the trial, Mr. Bowers clearly operated as Ms. Dymkar's second chair, handling few motions and questioning only a handful of witnesses. (*Id.*) He should therefore be compensated at a rate befitting his supporting role in the trial - specifically, $310/hour.

For the above reasons and the extended discussion in the Report & Recommendation, Plaintiff's objection that years of trial experience are the single most important factor in a rate determination analysis and that Plaintiff counsels' 34 years of experience should be the controlling factor is without merit.

### D.     *Attorney Career Success*

Fifth, Plaintiff objects to the win/loss analysis deployed in the Report & Recommendation stating that in court fee award decisions and in City of Chicago negotiations, such a record analysis has not been a criterion. (Pl.'s Obj. at 10-13). Judge Schenkier closely analyzed the win/loss records of Plaintiff's attorney and properly concluded that these records were relevant to the hourly rate determination. Plaintiff's contention again mirrors the earlier objections of Plaintiff regarding the importance of years of experience in rate determinations versus a career success analysis. This argument can again be challenged by the analysis mentioned in the proceeding paragraphs regarding the specifics of the rate determination for Ms. Dymkar and Mr. Bowers.

### E.     *City of Chicago Contracted Defense Attorney Rate*

Sixth, Plaintiff avers that the Report & Recommendation rejects consideration of the contracted rate for City of Chicago defense attorneys yet appears to adopt it based on the similarities between other hourly rates. (Pl.'s Obj. at 13). The Defendants recommended an hourly rate for both attorneys at $205/hour, justifying the rate as "the currently highest blended rate that the City pays outside counsel." (Defs.' Resp. [Docket No. 175] at 12; Defs.' Resp. Ex. B at 1). Plaintiff contends that the $330/hour for Ms. Dymkar and $310/hour for Mr. Bowers reflects the City's rate, even while stating in the Report & Recommendation that this rate is not a ceiling or indicative of a rate for attorneys representing plaintiffs in an alleged police misconduct case. (Pl.'s Obj. at 13).  The

contracted rate offered by the City of Chicago is neither a floor nor a ceiling in a rate determination case, but rather, as properly noted by Judge Schenkier, a factor to be considered. Furthermore, the $295 rate is not overwhelmingly instructive in an alleged police misconduct case because "lawyers who take work for government entities routinely discount their normal billing rates." (R&R at 16). Therefore, Judge Schenkier wisely concluded that the $295/hour rate requested by the Defendants is too low and substituted the more appropriate $330/hour and $310/hour.

### F.     Burden Shifting[2]

Lastly, Plaintiff contends that based upon the affidavits and other information provided in support of her hourly rates the burden regarding rates shifted to the Defendants who failed to offer "a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1310; (Pl.'s Obj. at 4). Plaintiff provided affidavits from Ms. Dymkar and other attorneys in the same field to support the greater rate, as well as a previous agreement by the City of Chicago to pay an award computed at $416.67/hour for Ms. Dymkar. (*Id.*). Plaintiff also pointed to previous court awards to other plaintiff's attorneys with the same or similar skill and experience. (*Id.* at 5). Finally, Plaintiff provides the Laffey Matrix, which is a "crude" guide to hourly rate determinations that is not dispositive and was discussed in more detail above. *See Pickett*, 664 F.3d at 650. However, Ms. Dymkar could not provide this Court with any previous court awards from jury trials where a reasonable hourly rate has been established for either herself or her co-counsel, Mr. Bowers. (R&R at 10).

---

[2]In Plaintiff's Objection to the Report & Recommendation, the third major objection reiterates this burden-shifting argument with no additional analysis. Therefore, Plaintiff's third objection has been incorporated into this Section F.

The Report & Recommendation concisely dissects the affidavits, court awards and Laffey Matrix provided by Plaintiff to demonstrate that several of the attorneys mentioned have advanced experience and success in alleged police misconduct cases and thus command increased hourly rates. (*Id.* at 10-15). Nowhere in the information provided by Plaintiff can an hourly attorney rate of $495/hour be sustained. Accordingly, where the fee applicant fails to supply the evidence necessary to support a rate determination, the district court may substitute its own judgment and make a determination. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999). The Court adopts Judge Schenkier's recommendation that Ms. Dymkar's hourly rate be $330/hour and Mr. Bowers' hourly rate be $310/hour.

**II.     The 15% Reduction of the Lodestar.**

The lodestar analysis requires a court to multiply the number of hours reasonably expended by plaintiff's attorneys by their reasonable hourly rates. *See Hensley*, 461 U.S. at 433. The lodestar figure is the "starting point" in fee determinations and may by adjusted for a variety of factors. *Estate of Enoch ex. rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). These factors include, among other things, "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 856-57 (7th Cir. 1999). Furthermore, proportionality between the amount of fees sought and the amount of recovery obtained is a relevant factor; any fee award "should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Moriarty*, 233 F.3d at 968.

Based on the calculations in the Report & Recommendation, the lodestar calculation for Ms. Dymkar, Mr. Bowers and Ms. Hill is $200,139.00. (R&R at 33). Defendants bear the burden of

9

demonstrating that a lodestar calculation reduction is appropriate. *See Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007). Defendants recommended lodestar amount, $112,542, represents a 35% reduction in the lodestar, an amount accurately deemed too low by Judge Schenkier. (R&R at 34). Judge Schenkier more properly reasoned that a 15% reduction in the lodestar was appropriate given the time expended on the failed malicious prosecution claim, the fact that Plaintiff recovered less than one-half of what he sought from the jury at trial, and Plaintiff's unrealistically high economic assessment of the case, especially in light of the failed malicious prosecution claim. (*Id.* at 38). The 15% reduction of the lodestar amounts to $170,118.15. (*Id.*). Plaintiff objects to this reduction of the lodestar on several grounds.

### A. *Degree of Success*

Plaintiff first objects to Judge Schenkier's reasoning related to the degree of success and the malicious prosecution claim. (Pl.'s Obj. at 14). Plaintiff maintains that Judge Schenkier's first and third grounds for reduction, both regarding malicious prosecution, seem similar and miss the point of the litigation. (*Id.*). Plaintiff asserts that the malicious prosecution claim was inherently related to the excessive force claim and involved the same set of defendants, discovery and depositions. (*Id.*). Furthermore, Plaintiff argues that from a litigation standpoint, the attorneys viewed the malicious prosecution claim as legally valid but not "a big ticket item" and therefore Judge Schenkier's determination lacks evidentiary support. (*Id.* at 15).

Judge Schenkier properly concluded that Plaintiff exercised an unrealistic valuation of the case and unnecessarily complicated the legal arguments with the malicious prosecution claim. (R&R at 34-5). This Court recognizes that lack of success on one claim in a lawsuit often only signals that "the lawyers aimed higher than they hit, which . . . is a sound tactic." *Bankston v. State of Ill.*, 60 F.3d

1249, 1256 (7th Cir. 1995). However, this maxim does not negate the discretionary capabilities of the judge in analyzing and assessing additional factors in a rate determination case, including the degree of success and additional superfluous claims. *See Schlacher*, 574 F.3d at 856-7. Plaintiff prevailed on two out of six claims at the jury trial, surely less than anticipated. For the reasons outlined in the Report & Recommendation in detail on this additional factor, the lodestar calculation is accordingly reduced. (R&R at 34-8). It should be noted, in fact, that Judge Schenkier was lenient in his calculations of an appropriate reduction as he did not reduce the amount of hours expended on the litigation to control for the malicious prosecution claim. (*Id.* at 37).

### B. *Proportionality*

Plaintiff contends that the disparity between the amount requested from the jury during closing arguments and the final jury verdict is irrelevant to the fee determination. (Pl.'s Obj. at 15). In closing arguments, Plaintiff asked the jury to award him $120,000 but the jury only returned a verdict for $52,500, including a mere $500 for the false arrest claim. (R&R, at 34-5). Had the malicious prosecution claim proceeded to a verdict in favor of Plaintiff, the requested verdict would have likely been greater. This low jury award indicates a disproportionate relation to the requested jury amount and is an element rightfully factored into any decrease in the lodestar calculation. *See Schlacher*, 574 F.3d at 856-7.

In the present case, the lodestar calculation of $209,757.50 is about four times the jury verdict of $52,500. As the lodestar calculation is "well in excess not just of what Plaintiff recovered at trial, but in excess of what Plaintiff sought at trial," (R&R at 37), Judge Schenkier correctly concluded that a reduction in the lodestar was appropriate and given this Court's discretionary authority to reduce the lodestar based on factors including proportionality. *See Schlacher*, 574 F.3d at 856-7.

### C. Degree of Complexity

Plaintiff argues that although the case did not involve many complex legal issues, it did require "tricky" trial techniques and strategies that warranted additional work. (Pl.'s Obj. at 17-8). Plaintiff particularly notes that the convoluted fact pattern, including divergent witness statements and uncertain testimony, obscured a clear legal strategy. (*Id.* at 17). The Court, having presided over the entire case and trial, agrees with Judge Schenkier's clear and concise disposal of this argument. As stated in the Report & Recommendation, "the legal issues presented here were generally common to cases involving alleged police misconduct and did not explore new territory." (R&R at 35).

### D. Public Interest

Finally, Plaintiff argues that contrary to Judge Schenkier's determination, the verdict does have a public interest impact that weighs in favor of awarding the full lodestar amount (Pl.'s Obj. at 18). Plaintiff also contends that there is no statutory requirement that in order to receive the full lodestar an institutional change must be engendered. (*Id.*). Furthermore, Plaintiff contends that the Chicago Police Department's taser gun policy has changed and that the punitive damages awarded against Defendant Ortiz will serve as both a general and specific deterrent. (*Id.*).

In nearly all Section 1983 cases where a plaintiff prevails, it can be observed that the public interest can be served by "exposing to light disturbing police malfeasance and grave municipal institutional failures." *Robinson*, 489 F.3d at 872. However, a more nuanced approach to the public interest is appropriate in a lodestar calculation, as outlined by Judge Schenkier. (R&R at 36) "For the public interest factor to weigh in plaintiff's favor, we look to whether there was some larger impact achieved by the verdict, such as exposing some deeper institutional problem within the department transcending the individual case…" (*Id.*). In this present case, the incident was isolated

12

to one particular situation, on one specific date with one specific group of officers. (*Id.*). Therefore, given the minimal impact on the public interest, a reduction in the lodestar is appropriate.

**III. Prejudgment Interest**

By separate motion, Plaintiff requested interim attorney's fees and prejudgment interest on attorney's fees. (Docket No. 172). Defendants objected to a payment of an interim fee award, but failed to mention prejudgment interest in their response to the fee motion. (R&R at 39).

Prejudgment interest is "presumptively available" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *U.S. v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993). The Court has the discretion to determine in each particular case whether prejudgment interest is appropriate. *See id*. Defendants' silence on the prejudgment interest matter is not dispositive, but in the absence of a reason to the alternative, Judge Schenkier properly concluded that prejudgment interest is appropriate in this situation. (R&R at 40). Therefore, prejudgment interest is awarded to Plaintiff beginning on September 18, 2011, 30 days after Plaintiff submitted his fee information to the defense as required by Local Rule 54.3 (d)(1)-(2). Prejudgment interest shall be calculated at the prevailing prime rate of 3.25%. *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999) ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest."); *www.federalreserve.gov/releases/h15* (prime rate from September 18, 2011 until the present is 3.25%).

**IV. Interim Attorney's Fees**

Plaintiff seeks $112,542 in interim fees, an amount that reflects an agreement between Plaintiff and Defendant. (R&R at 40). Although Plaintiff and Defendant agree on this amount, it is not required to award interim fees in all cases. (*Id.*). Judge Schenkier recommended that the interim fee award be denied in the present case, given that the result is a final judgment and the results did not indicate that the considerations weighed heavily in favor of the award. (*Id.* at 42). Interim fees awards are generally appropriate, in situations where a plaintiff had obtained relief prior to final judgment that was "not defeasible by further proceedings," such as a preliminary injunction or partial summary judgment. *See e.g., Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005); *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542, 552 (7th Cir. 2004); *Young v. City of Chicago*, 202 F.3d 1000, 1001 (7th Cir. 2000). In the present case, the judgment is final and therefore this Court denies Plaintiff's request for an interim fee award.

**V. Bill of Costs**

Finally, Plaintiff objected to Judge Schenkier's brief separate Report and Recommendation (Docket No. 185) in which he recommended that Plaintiff's costs be reduced by $150: $110 for the cost of a trial subpoena plus the $40 witness fee for a witness subpoenaed by the plaintiff who did not ultimately testify. Witness fees for a witness who does not testify at trial may be properly assessed if that witness's attendance was reasonably expected to be necessary and if that witness held himself ready to attend the trial. *See Haroco, Inc. v. Am. Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1442 (7th Cir. 1994) (witness fees compensate witness for "their availability and readiness to testify rather than actual testimony"); *Spanish Action Committee of Chicago v. City of*

*Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987). Therefore, Plaintiff will be awarded the $150 at issue.

## CONCLUSION

Based on foregoing reasons, the Court adopts the Report and Recommendation regarding attorneys' fees [Docket No. 187]. The Plaintiff shall be awarded $170,118.00 in attorney's fees; awarded prejudgment interest on the attorney's fee award at the rate of 3.25%, with interest beginning on September 18, 2011; and denied an interim fee award. The Court does not adopt the Report and Recommendation regarding costs [Docket No. 185]. Plaintiff shall be taxed costs in the full amount requested, $5,918.61.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 14, 2012